grant the writ when applied for. The motion to quash all proceedings is granted and the prisoner is remanded to the sheriff.

---

## Case No. 13,775.

### In re TAYLOR.

[3 N. B. R. 157 (Quarto, 38).] [1]

District Court, S. D. Georgia. 1869.

HOMESTEAD—"HEAD OF FAMILY"—RIGHT TO SUPPORT.

Where bankrupt, residing in Georgia, rented a house, hired servants, and made his home therein with a widow not related by blood to him, but whom he and his wife had educated and regarded as their adopted daughter, but had failed to adopt her in accordance with law, *held*, that he is head of a family, and entitled to exemption as such of fifty acres of land as a homestead, but is not entitled to five acres additional for each of three children of the widow residing with them, and forming part of the household, inasmuch as he is not legally bound to support them.

Years ago Dr. William Taylor and his wife had one child, and never had any more. A sister of Mrs. Taylor, on her dying bed, and as a parting request, asked Mrs. Taylor to take her infant and raise it for her. Mrs. Taylor, by consent of her husband, Dr. Taylor, took her sister's child, thus left an orphan (mother and father both being dead), to her home, and treated it in all respects as one of her own. Dr. Taylor's own child died, and then the orphan was the only child in the family. Dr. Taylor and his wife doated on the child, gave her a good education, and reared her in all respects as they would have reared a child of their own. In fact, they regarded her as an adopted child, but never by any legislative or judicial act adopted her so as to make her a legal heir. In process of time Mrs. Taylor died, and the child they had reared from her infancy became Mrs. Carswell. Mrs. Carswell always regarded Dr. Taylor as a father, and he regarded her as a daughter. Col. Carswell, in 1867, resided in a rented house in Irwinton. In the fall of that year he was taken sick, and lingering till February, 1868, he died, leaving Mrs. Carswell a widow with three children. The rent of the house having expired with the year 1867, Dr. Taylor came in immediately on the death of Col. Carswell, re-rented the house, hired the necessary servants for the comfort and convenience of Mrs. Carswell and children, and made that his home. The plantation of Dr. Taylor is in the fork of Commissioner's creek and Oconee river, and being nearly surrounded by swamp, is considered an unhealthy location for a residence. This is the only real estate he owned at the time of filing his petition in bankruptcy. On the 1st of June, 1868, while thus residing in Irwinton, Mrs. Carswell, her three children,

and the hired servants constituting the family, Dr. Taylor filed his petition in bankruptcy. The assignee, in setting apart the property exempted by law for the use of the bankrupt, included in the exempt list sixty-five acres of land laid out from the plantation; that is to say, fifty acres for Dr. Taylor as head of a family, and five acres additional for each of the three children of Mrs. Carswell. To this exemption by the assignee, Col. Cumming, as counsel for creditors, excepts, and files the following specifications: First. That Dr. Taylor was not the head of a family, and was not entitled by law to any homestead exemption. Second. That Mrs. Carswell and her children having already had an exemption out of the estate of Col. N. A. Carswell, have no right to an exemption out of Dr. Taylor's estate.

By ALEXANDER G. MURRAY, Register:

On the 1st day of June, 1868, Dr. William Taylor, then residing in a house in Irwinton, which he had rented, having as his family Mrs. Carswell, her three children, and two or more hired servants, which were hired by him, and were under his control, was the head of a family; and, as he still continues to so reside, his position as head of a family still continues. As the head of a family, he is entitled to an exemption of fifty acres of land, under the exemption laws of Georgia of force in 1864. Code Ga. § 2013. To constitute a head of a family, it is not necessary that a man shall have either a wife or child. If he reside in a house of which he is proprietor, and have no other inmates than hired servants, he is in law the head of a family. See Case of Cobb [Case No. 2,920]. But as Mrs. Carswell and her children are not related by blood to Dr. Taylor, however strong his social relations may be, and with whatever affection he may regard them, he is not legally bound to support them, nor can they be regarded as his legal heirs. Hence, he is not entitled to any enlargement of his exemption on account of the three children of Mrs. Carswell.

ERSKINE, District Judge. The decision of Mr. Register Murray is affirmed. The clerk will so certify.

An opposite conclusion was reached in a case under the Texas law. See In re Summers [Case No. 13,604].

---

## Case No. 13,776.

### In re TAYLOR et al.

[1 Wkly. Notes Cas. 16.]

District Court, E. D. Pennsylvania. Oct. 1, 1874.

BANKRUPTCY—AMENDED ACT—EFFECT ON PENDING PROCEEDINGS—READJUDICATION.

Adjudication under section 12, Act 1874 [18 Stat. 182], when petition filed before act.

---

[1] [Reprinted by permission.]

[In the matter of William N. Taylor & Co., bankrupts.]

A petition for adjudication was filed in this case previous to the passage of the amendments of June 22, 1874. An adjudication was not had, however, thereon, until subsequent thereto, section 12 of said amendment being retrospective. A petition signed by the requisite amount in number and value of their creditors was filed, praying the court to make such order of confirmation or adjudication as would validate such proceedings.

Mr. Cleeman, for petitioning creditors.

THE COURT vacated the warrant heretofore issued, and newly adjudged said firm bankrupts, and ordered the issuing of a new order of adjudication.

———

TAYLOR, In re. See Case No. 11,977

———

## Case No. 13,777.

TAYLOR v. The ANN D. RICHARDSON.

[See Case No. 410.]

———

## Case No. 13,778.

TAYLOR v. ARCHER et al.

[8 Blatchf. 315; 4 Fish. Pat. Cas. 449.][1]

Circuit Court, S. D. New York. April, 1871.

PATENTS—DISCLAIMER — EQUIVALENTS — FIRST INVENTOR—COSTS—FLEXIBLE GAS TUBING.

1. Letters patent were granted to William B. S. Taylor, February 21st, 1865, for an "improved flexible tubing for illuminating gas." The assignee of the patent brought this suit, and, during its pendency, died. His administrator was substituted as plaintiff. The claim of the patent was, "the use and application of glue, or glue composition, in the tubing, substantially as described, for the purpose of making the flexible tubing gas tight, whether of cloth, or rubber, or other gum." During the pendency of the suit, the plaintiff, as sole owner of the patent, filed in the patent office a disclaimer to that part of the claim of the patent "which claims, as an improvement in flexible tubing for illuminating gas, the use and application of glue, thereby limiting the claim to the use and application of glue composition in the tubing, substantially as described, for the purpose of making the flexible tubing gas tight, whether of cloth, rubber, or other gum." *Held*, that the disclaimer was valid.

[Cited in Smith v. Nichols, 21 Wall. (88 U. S.) 117; Dunbar v. Meyers, 94 U. S. 194; Electrical Accumulator Co. v. Julien Electric Co., 38 Fed. 135.]

2. The glue composition of the plaintiff's patent was made of glue, dissolved in water, with molasses, (or, by substitution, glycerine,) honey or syrup added to preserve the glue in a flexible state. The defendant's tubes were made by the use of glue and glycerine in connection with animal intestines, used in a tubular form. Animal intestines were shown to have been, at the date of the patent, a known equivalent, in the making of flexible gas tubes, for the cloth or rubber or gum spoken of in the patent. The plaintiff used the glue to render the tube gas tight, and the glycerine to keep the glue moist. Glue was shown to be practically impervious to gas. The glycerine, in the defendant's tubes, kept the intestine moist, and the glue moist also, and the glue acted, also, to keep the glycerine limpid. *Held*, that the defendant's tubes infringed the patent.

3. The said patent to Taylor is valid.

4. Although the patentee may have started later in his experiments towards the invention than another person did, yet, as he first made the completed successful invention and followed it up by his patent, he must, in the race of diligence, be *held* to be the first inventor.

5. The plaintiff was *held* not to be entitled to recover costs, his disclaimer having been filed during the pendency of the suit.

[Cited in Guarantee Trust & Safe-Deposit Co. v. New Haven Gaslight Co., 39 Fed. 269.]

[This was a bill in equity, filed to restrain the defendants [Ellis S. Archer and others] from infringing letters patent [No. 46,507] for an "improved flexible tubing for illuminating gas," granted to William B. S. Taylor, February 21, 1865, and assigned to Frederick R. Taylor, July 10, 1866.][2]

Charles M. Keller and Charles F. Blake. for plaintiff.
George Gifford, for defendants.

BLATCHFORD, District Judge. This suit was brought in August, 1866, by Frederick R. Taylor, as plaintiff. He died in October, 1866, and his administrator, William B. S. Taylor, was substituted as plaintiff. The suit is founded on letters patent granted to William B. S. Taylor, February 21st, 1865, for an "improved flexible tubing for illuminating gas," and assigned to Frederick R. Taylor, July 10th, 1866.

The specification says: "My said invention consists in the use of glue, or a composition of which glue forms a principal ingredient, as a coating or lining for flexible tubing used for the conduction of illuminating gas, and for the purpose of making such tubing impervious to the gas or its fluids." Four figures of drawings are then given, one showing a section of a rubber tube, with an inner lining or coating of glue; one showing a rubber tube, with a glue coating and a rubber covering; one showing a cloth tube, with a glue coating and a cloth covering; and one showing a cloth tube saturated with glue and having a covering of rubber or cloth. The specification proceeds: "I depend upon the glue to prevent the gas from penetrating through the tubing. In coating or saturating the tubing, the glue may be dissolved in water, and a portion, say one-third, of molasses, honey, or syrup added, to preserve the glue in a flexible state. Glycerine will answer as a substitute for molasses. The glue or glue composition is applied hot.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 8 Blatchf. 315, and the statement is from 4 Fish. Pat. Cas. 449.]

[2] [From 4 Fish. Pat. Cas. 449.]